The next case this morning is 20-1151 Wildgrass Oil and Gas v. State of Colorado. All right, counsel. We are ready to hear you. It's a good day today. We're ready to go. Good morning, your honor. This is Megan Hayes. I represent the Wildgrass Oil and Gas Committee. I would like to reserve five minutes of my time for rebuttal. Time is yours. Okay, thank you. Wildgrass contends that the district court abused its discretion when it invoked a rarely used abstention doctrine to avoid completing a review that it had set in motion. The issue here is whether the Colorado Oil and Gas Conservation Commission's procedure for approving an involuntary pooling application passed muster under the due process clause of the 14th amendment. So, counsel, tell me what about their procedure didn't pass constitutional muster in your mind? Specifically, what did they not allow you to do? Specifically, and it is alleged in the amended complaint that's in the record on appeal, there are a number of things they weren't allowed to do. They weren't provided sufficient time. I'm not going to go through all those, but well, they weren't allowed sufficient time. They weren't allowed sufficient discovery. I can direct your honor to the page in the record in their amended complaint, but the primary issue here is that the commission never articulated the standard on which it would or did decide that its pooling order was just unreasonable or what terms it would consider to be relevant in the context of this large-scale oil and gas development in close proximity to a residential subdivision. Let's break that down a little bit. Okay, so insufficient time. Was that a complaint that you could have dealt with in an appeal to state court? Well, the federal courts are the ultimate arbiters of federal civil rights, and the issue that they have asserted in this as applied challenge is were they given a meaningful opportunity to be heard for purposes of the 14th amendment? So, sure, the state court could have decided to do were they given under the Colorado constitution, but not whether this issue that they've raised pursuant to section 1983 is whether they were meaningfully heard in the context and in these circumstances for purposes of the 14th amendment. No, I get that. I guess what I'm trying to get at is could you have received the same relief in state court through an administrative appeal? I mean, your complaint was we didn't get enough time. I guess the relief you would want from that is for the commission to give you sufficient time. Right, I don't mean to suggest that we're just whining that we didn't get enough time. No, I know. I'm planning on walking through chapters with you. So, let's skip that. Insufficient discovery. I mean, if you wanted discovery, could you have gone to, because one of the important factors under Burford is whether you could have gotten what you wanted from the federal court by going through the state process. And so, could you have gone to state court with an administrative appeal and say, look, this was, we were not allowed to put on a case. Their decision was evidence. And, you know, it was, they didn't allow us to put on the things that we thought were important. I mean, could you have, could the state court and appeals from the state administrative process have gotten you to the same place as a, for purposes of relief? Um, no, I don't believe so. And here's why. I mean, the crux of the issue here is, was wild grass given sufficient notice of the standard they would be applying? Okay, so I, yes, we have said wild grass didn't get enough time. It didn't get to, you know, do the discovery it wanted. Would it be different relief? The relief wild grass is seeking is some clarity on what the standard is that would apply. You know, they're not required to go to state court to get redressed for their federal civil rights. A federal court can, and I think it is the Nopsey decision that, you know, vindication or challenging the constitutionality of state action. It, the federal constitutionality of state action is the province of the federal courts. And that's what wild grass is asking. They had started this federal lawsuit. It was stayed basically while the commission held a hearing. Wild grass is saying they weren't given sufficient, they had not an insufficient understanding of what standard the commission would be applying to review whether the leases they were offered were reasonable or what it would consider to be relevant lease terms and how they would determine whether their pooling order was just unreasonable. So let me interrupt for a minute. What about the commission rule that specifies what they will consider? Doesn't that give you notice of what they're relying on? Well, as the state has pointed out, those are mandatory factors, yes. There's a fifth catch-all factor, you know, that it has to, it has to include just and reasonable terms. I have not seen in either the state's brief or the intervener's brief what that term means. It could mean different things. For example, you know, what sort of lease needs to be offered if this is going to be a large-scale oil and gas development next to a busy rail yard, for example, in proximity to a protected aquifer or riparian area, near a sacred burial ground. You know, I think the fifth term is sort of this catch-all term so that the commission has the flexibility to tailor to understand whether leases in a particular situation are reasonable. It's not just, the wild grass members aren't, you know, they're not that worried about whether they're going to get a sufficient royalty or not. They're worried about, you know, are our houses going to be endangered? Isn't that just the kind of policy considerations that Burford was faced with and said the federal, the federal courts aren't going to get involved with? No, I don't, whoa, I don't think that's the kind of issue Burford was concerned with because here wild grass has asserted that they are, they have been denied procedural due process. They have been denied the opportunity to be meaningfully heard. It is a federal issue. Burford, most Burford cases don't consider federal issues. There doesn't seem to be any state policy or any rule that suggests there's no reason a federal court can't make this decision. So council, where would you be if the commission had said, okay, tell us everything you want us to consider and we're going to consider it. And you said, well, we want to know, is it going to be close to our house? Is it going to cause air problems? Is it going to cause like a sinkhole by our house? And you listed, I don't know what all your, all your terms are, but you, you asked about all of them. They had a witness up on the stand. You were able to put on your testimony and the commission said, thank you, Ms. Hayes. Those things don't matter to us. So we're going to rule against you. Would you, where, where would your case, this case be if they would have done that? Well, I probably wouldn't be right here at this moment. I might be out skiing or doing something else. But yeah, you're raising an important point. If, had the commission provided more clarity about what, what it would, what it would consider to be relevant lease terms, had the, had the commission given wild grass members the opportunity to be heard on their concerns about health, safety, environment, financial issues, they would have been heard, but their contention is they weren't heard. And according to the state's brief, there's really no place for them to be heard on these issues in the entire process. And so that's why they've come to the federal court to say, you know, maybe the federal courts should decide, you know, in this situation, did this process comply with the federal constitution or were, we given the opportunity to be meaningfully heard? Did the commission articulate what standards it would be using so that we could address those standards at the hearing and it's wild grasses. Had they done what you're suggesting judge Carson? Yeah, I probably wouldn't be here today. Okay. So let's, let's talk about this. I mean, you did have an opportunity to be heard, at least on some things you participated in a hearing and put on three witnesses and a certain amount, a little over an hour's worth of testimony. I think I recall from the record two witnesses, two witnesses. Okay. And, and at the end, I think you said, Hey, I've not had enough time. And they said, okay, how much more time do you need? Yeah, well, I guess, I mean, you're because, because it all becomes complicated because you then it's, well, I know more today because I'm not ready to put on anyone else today. You had to tell me in advance, I guess what I'm wondering is under that catch all provision, if maybe it was your burden to say what you wanted to say, and they got to decide whether what you said meant something to them or influence the result. I'm sorry. I'm not sure I understand your question. Well, I mean, you want them to tell you, okay, these are the things that are going to be important to us in making our decision. And you say, if they don't tell you that it's a due process violation, and I'm just suggesting maybe as a litigant, it could be your position, your job to put on your case in an effort to convince them that what you say is important, are important lease terms that they should consider. Sure. Yeah. Okay. And fair enough. Wildgrass before the hearing asked for a minimum of three hours, but, you know, suggested that it could take much longer than that. Like they had thousands of pages of documents to I, it's on the order of four days before the hearing in a pre hearing order, final order, they were told they would have an hour and 15 minutes. And so then you have to tailor. I mean, I've got 15 minutes here. I can't, you know, prepare for three hours before you all. And then, you know, I'm told I have 15 minutes and all of a sudden, oh, you have more time. Well, I haven't prepared for three hours. I've prepared for 15 minutes. I know you'd like to hear from me for three hours, but I've got 15 minutes and I'm going to try to tailor what I say to that time. And if at the end of it, you tell me, well, Miss Hayes, you've got another two hours, keep going. I'm really not prepared to do that. So it wasn't. I hate to be the one who tells you this, but you don't have two hours left. You have 40 seconds. You want to reserve time. I understand. You told me two hours. I don't know. I have one issue. Her time is the remainder of time is reserved. Council will hear from, from you pointed to the right of my screen. I don't know. That's Davenport. I think. Yes. All right. May it please the court. I am Kyle Davenport. I'm counsel for the state appellee defendants, counsel for appellee intervenors. Mr. David Meschke and I are splitting the argument today. I will explain why appellants procedural due process claim is only federal clothing for its mistaken state law arguments that protection of public health and the environment or an operator's financial status are relevant considerations in pooling. And their arguments would also disrupt the commission and the Colorado legislature's efforts to establish a coherent regulation of oil and gas development because appellants arguments would require the commission to revisit decisions made at the permitting stage in pooling. I'm also here to answer any questions regarding the commission's regulatory processes. Mr. Meschke will discuss the application of the Burford abstention doctrine to this case. We just had a lot of discussion about the merits, but the issue presented to this court is narrow. And that is whether judge Jackson aired in dismissing appellants procedural due process. And whether he abused his discretion, right? Yes, your honor. Thank you. That's a more accurate statement. Judge Jackson recognized after reviewing the commission's pooling hearing and the motion to dismiss briefing that state law and policy questions raised by the appellants were best left to the state to resolve. And a really good example of this is appellants arguments in regard to rule 530. That is the rule that provides the five factors the commission should consider in pooling. It is the statute that provides the relevant inquiry for the commission in pooling. Section 3460.116.7d of Colorado's oil and gas act provides that when a pooling application is protested, the commission must examine the lease terms offered to the protesting mineral owner to determine they were no less favorable than terms of leases in the specific determination. The commission will consider four specific lease terms and any other lease terms that are relevant. Relevant to the determination of was the offered lease no less favorable than the leases in the prevailing area. The rule is clear and provides guidance. Appellants argument is that it was denied due process because the commission did not allow all of its requested discovery or presentation of potential impacts to public health and the environment, history of accidents, or operator's financial condition. That relies on the assumption that these are relevant considerations in pooling. That is a state law question. What are relevant considerations in pooling? This state law question also goes far beyond just this case because it goes to how the commission reviews all pooling applications. Finally, this specific question is not one that a state court in Colorado has addressed yet, whether or not those are law questions that transcend the case at bar. Similarly, appellant claims a procedural due process violation because it was not allowed discovery into all leases offered or accepted in a 25-mile radius. That is a discovery request that goes outside the bounds of the commission's rule 530, which allows... Let's assume, for the purpose of my question, that it didn't go outside. To what extent can these issues be raised in state court? Judge Lucero, the state court is available through Colorado's APA to provide all of the relief that Wild Grass is requesting. To what extent does Burford abstention require an exhaustion of state remedies? Burford abstention does not require an exhaustion of state remedies. It simply requires that timely and adequate state court review be available, and it is here. The state Colorado APA provides all of the relief that a court may give all of the relief Wild Grass is requesting, including its federal due process. If that's the case, why isn't this case on your side of the ledger as easy as saying, ladies and gentlemen of the Tenth Circuit, here are the Colorado statutes. Here's the Colorado Administrative Procedure Act. All of these remedies are available to the appellant in this case. The appellant has failed to utilize, not necessarily exhaust, but utilize these remedies. Thank you. End of case. Well, I think it is that simple, Judge, on the one factor of Burford abstention of whether or not timely and adequate state court review is available. As this court knows, there are other elements to Burford abstention, and that is whether or not the case raises... Well, you're talking about New Orleans Public Service case? I am. Then why isn't your case as simple as saying, one, there are difficult questions to state law, two, the exercise of federal review of the question is a case would be disruptive of state efforts? End of discussion. I think it is that simple, Judge. I may just be taking the long way around of saying exactly that. My problem from where I sit is that cases that might appear to be simple get overly complicated by the arguments that are so far in the ether that I find it difficult to breathe good, clean oxygen to understand them. Judge. I apologize for interrupting. No, that's all right. Just making a point here. I understand. I will do my best to simplify. There is also, what's appellants are requesting is really an entire change, wholesale change to the commission's regulatory process. The commission considers the factors appellant... Well, what they're asking is that we throw Burford Extension out the window and, by gosh, listen to my arguments and rule on them, right? That's a much better way of stating what they're asking for than I could have said, Judge. Okay. Well, as I tell my clerks now then, the KISS rule, you remember the KISS rule from... I do. Kettergarten 101A. I do, Judge. And in that regard, I will turn the remainder of my argument over to Mr. Meschke. Well, I don't mean to suggest that I'm going to rule your way. I'm just saying I just got to make sure I understand your argument. I think you understand it very... I think you understand it very well, Judge. We are arguing that this case meets all of the Burford Extension elements, including that there are state law issues presented, as well as what appellants are requesting is that the court disrupt what is a comprehensive and complex state regulatory process. Thank you. Good morning, Your Honors. May it please the court. My name is David Meschke, and I represent the appellees, the Colorado Oil and Gas Association, and the American Petroleum Institute. As counsel for the state noted, I will be addressing the application of the Burford Extension doctrine, although we've already started that today. Before you get too far into that, let me ask you this question about it. Give me a case where a court has used Burford Extension to abstain from a federal procedural due process claim. Your Honor, Burford itself was a 14th Amendment due process claim in a very similar oil and gas context. As the COGCC regulations show, there is a three-step process in Colorado involving spacing, permitting, and pooling. The issue in Burford was the drilling permitting process under a different regulatory scheme in Texas, but it's a similar due process case under the 14th Amendment. Do you, since Burford, I mean, Burford's been around a long time. Since that time, can you give me another one? Can you give me a circuit case that's applied it? We've been poking around Westlaw trying to find it, and I just wondered if you can put me there. Well, Your Honor, as you know, Burford Extension is a very fact-dependent inquiry, and I think one of the cases that is very indicative of what we're dealing with here is the Johnson v. Collins Entertainment case of the Fourth Circuit. While that isn't a procedural due process case, per se, that case involved a RICO statute, the Fourth Circuit indicated very clearly that even though the claim was a federal claim, a claim under RICO, it was really a claim with a predicate state law question, and the Court went into great detail on why not addressing that aspect of it. In other words, precluding from Burford Extension all cases involving some type of federal claim would allow parties to enter into the federal court and disrupt the state court system. Okay. Your Honors, we've already addressed the second element under Burford, and really at the heart of this appeal are the third and fourth elements under the NOTC factors, which are best understood as counsel for the state and doted based off of what appellant is actually seeking here. The third element is interference with state administrative agency proceedings and orders, and here appellant's one claim on appeal is not a simple procedural due process claim, rather appellant is asking the federal court to determine whether the wild grass owners should have been allowed to present evidence at a pooling hearing according to appellant's own view of what that fifth factor in Rule 40 means. An appellant is continuing to not allow sufficient time and discovery to present evidence on issues, and looking at the record, those are history of accidents, financial condition of extraction, and the lease terms in a 25 square mile radius that the commission has determined are not topics at a pooling hearing, which is a hearing that is limited to assessing the reasonableness of the lease terms. Therefore, appellant's really asking for a change in how the commission applies and interprets Rule 530 in the pooling statute, which is broader than whether lease terms offered were reasonable. So are there stages in the oil and gas development process or progression where the plaintiffs would have been able to air these concerns that I was talking about with Ms. Hayes? You know, the traffic, what it's going to do to the air, the health, safety, and welfare. Is that a situation where they could have addressed those to the commission when somebody was wanting an APD or getting permission to drill? Yes, your honor. So as I mentioned earlier, there's kind of three steps in the process. There's spacing, permitting, and then pooling. At the permitting process, health and safety and welfare concerns may be raised in the public comment period. Well, counsel, we may be sympathetic to the goals that Ms. Hayes is arguing about, the substantive goals. That is to say, if I had a house in a super nice neighborhood, I might be a little bit upset about having an oil derrick go next by or smelly pipes pulling extractions out of the air under my rosebush. But no matter how sympathetic we may be, the state courts and the state administrative agencies are there to air and hear those concerns. Under what scenario would you lose? What burden do you feel that Ms. Hayes could meet that would cause you to lose this case? Your honor, this case would be very different if appellants were seeking something else. And I know appellant has been pointing to the case out of state. I would say that the case is analogous, even though there's a big factual difference in the fact that in that case, there was no statute or rules determining or helping guide Idaho's commission on what was just and reasonable. But in a situation where there is a clear requirement under state law that is either isn't followed, or as in Citizens Allied, a situation where there is just no guidance. And as the court's probably aware, the Citizens Allied case, the court actually said this was a close case on the massive elderage factors. But in situations like that, where there's no guidance whatsoever, then there are procedural due process considerations that don't delve into state law and the commission's regulatory processes. But that's not the case we have here. Let me ask you this. Ms. Hayes argues that to pursue state remedies would have been futile. And they know that it would have been futile because they brought previous actions in state court against the permitting, during the permitting phase, and their Your Honor, I see my time's almost up. Permission to answer the question? Yes. Your Honor, the argument that this would be futile misunderstands not only the APA process. Appellants could, as under the Colorado's APA, appeal a pooling order, just like any other stage of the process, to Colorado State Court, specifically Denver District Court. And then on top of that, this is not a futile exercise because the issue that appellants are actually raising is an issue that is not really supposed to be before this court. It goes to the heart of what this is really about. And so their arguments that this is a futile exercise is based off of what the state is saying, not based off of what a court is saying. Thank you. Thank you. And Your Honor, I see my time's up. I'll please ask that this court further. Nothing further, Carolyn? No, thank you. All right, thank you. Ms. Hayes, thanks to the gracious act of your opponent having gone over an extra minute, you get an extra minute too. So you've got a minute and 34 seconds to finish up. I was hoping I might get my full three hours, but I will just go with my last comment. I think Judge Carson only given you two hours. In terms of going to state court, the state has said, and they will argue, that you can't raise environmental health and safety concerns in the pooling order hearing. That's in their brief. It's in my brief where it's cited. And I would just, again, even NOPC says that federal courts are the ultimate arbiters of federal civil rights and constitutional rights. And the federal court, district court here, could have and should have decided whether wild grass was afforded due process. Thank you. Well, it seems to me you're mixing substantive and procedural. I mean, is your complaint a substantive? I thought your complaint was a procedural one, not a substantive one. Yes, wild grass did assert both substantive and procedural due process. But this appeal is just procedural due process, your honor. All right. Just wanted to make sure as I got out the ether that I got the case right. So it is procedural. Yes, correct, your honor. You've all been extremely patient with my offhand remarks, particularly Mr. Davenport. Thank you all. I appreciate the argument. My counsel, my colleagues do as well. Case is submitted. Counselor excused.